UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SIGMA COATINGS USA B.V.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2850** |
| **SIGMAKALON B.V. AND SIGMAKALON USA, LLC.** | **SECTION "K" (4)** |

## ORDER

Before the Court is defendants' Motion to Dismiss or, alternatively, Stay Proceedings and Compel Arbitration (Rec. Doc. No. 4), as well as plaintiff's Motion to Enjoin Defendants from Pursuing Arbitration (Rec. Doc. No. 13). Oral argument was held August 23, 2006. Upon review of the pleadings, memoranda and relevant law, and having found a lack of subject matter jurisdiction, the Court **GRANTS** defendants' Motion to Dismiss and **DENIES** plaintiff's Motion to Enjoin, for the reasons set forth below.

**Facts and Argument**:

This action was filed on May 26, 2006 by plaintiff Sigma Coatings USA B.V. ("Sigma Coatings"). Plaintiff has its principal place of business in Harvey, LA but is a corporation organized and incorporated in the Netherlands. Defendant SigmaKalon USA, LLC ("SK-USA") is a Delaware limited liability corporation with its principal place of business in Houston, Texas.

Defendant SigmaKalon B.V. ("SK-BV") is organized and incorporated under the laws of the Netherlands with its principal place of business in the Netherlands.

At one time plaintiff was part of the "SigmaKalon" corporate group, a group of about 140 companies, including defendant SK-BV, who was closely affiliated with "Sigma Marine," also a SigmaKalon company. Defendant SK-USA is a wholly-owned subsidiary of Sigma Marine. SigmaKalon and its related companies are in the business of selling and supplying decorative, marine, protective and industrial coatings. On February 28, 2003 the SigmaKalon corporate group was sold to an investment house, Bain Capital. Instant plaintiff Sigma Coatings was the only "Sigma" related company specifically excluded from the sale, apparently carved out due to its exposure to potential liability in several unrelated U.S. litigations pending at the time of Bain's acquisition.

Thus, at the time of the sale plaintiff Sigma Coatings became, via execution of two Technology License Agreements, a Trademark License Agreement, as well as a Supply Agreement, essentially a licensee of SK-BV. Such a relationship was apparently necessary in order for plaintiff to keep selling certain of defendants' products, and Sigma Coatings became the exclusive licensee for the U.S. and Canada of Sigma Marine products. Notably, these License and Supply Agreements contain arbitration clauses. Relatedly, the entities also executed another agreement, an "IT contract," which does not contain an arbitration clause, but purports to deal with access to and use of certain proprietary and confidential information via SAP, SigmaKalon's accounting system.

Plaintiff Sigma Coatings itself was located in Harvey, Louisiana and had approximately 100 employees. Most of the products it sold and manufactured were licensed to it by "Sigma

Marine" (not named as a defendant in this case); however apparently these products were often modified at the local level to comply with U.S. environmental standards and regulations. Additionally, certain products were subject to exclusive registration and data rights issued by the EPA in favor of Sigma Coatings. By summer of 2005 plaintiff's annualized gross revenues allegedly approached $34 million dollars. According to plaintiff, part of the success of the business included use of detailed customer information lists developed by plaintiff over the years.         In late August of 2005, Hurricane Katrina hit, devastating plaintiff's Harvey manufacturing plant. Plaintiff relocated to Houston, TX. During this transition plaintiff requested that defendant SK-BV allow some of its products be produced by certain third party toll manufacturers as a means to keep plaintiff's business afloat until facility repairs could occur. The request was denied, allegedly because SK-BV preferred not to release proprietary formulas to outside manufacturers. Plaintiff alleges this refusal left it without a means to service the needs of its customers and with no choice but to close the Harvey plant and sell the company, including intangible assets such as accounts receivable, confidential customer information, and proprietary EPA product registrations. Additionally, according to plaintiff's Complaint, in the interim between Hurricane Katrina and plaintiff's request to contract out production to certain third parties, defendant SK-BV was not only negotiating with the same third party toll manufacturers they had forbidden plaintiff to use, but also, through use of its shared accounting program, SAP, was copying confidential customer information of plaintiff. While negotiating with plaintiff to buy the company, defendant was transferring this information to its new operating subsidiary in Houston, defendant SK-USA. Thus plaintiff argues that while plaintiff was in the midst of rebuilding from Hurricane Katrina, its former business partners were, via use of plaintiff's

3

confidential information garnered as a result of their past business relationship, using plaintiff's misfortune from Katrina to establish their own business presence in the United States.

Consequently, plaintiff filed suit against defendants, alleging, *inter alia*, misappropriation of trade secrets, unfair trade practices, violation of the Economic Espionage Act of 1996,[1] fraudulent misrepresentation , interference with contract, interference with prospective business advantage, unfair competition, and interference with plaintiff's registration rights under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  7 U.S.C. § 136 *et seq.*  In its memoranda plaintiff also raises another federal statutory basis for jurisdiction, the Electronic Communications Privacy Act ("ECPA").  See 18 U.S.C. § 2701(a)(2).

Related proceedings include an arbitration in the International Chamber of Commerce (Belgium) and a state court action in Texas.  Defendants now move to dismiss the claims against them.  Notably, the parties dispute whether the outcome of the ICC arbitration will have any affect on the instant claims over ownership of registrations/trade secrets.  Additionally, the Texas litigation has since been removed by plaintiff to federal court in Texas where, pending the outcome of the instant motion, it could be transferred to the Eastern District of Louisiana.

Defendants now move to dismiss or alternatively compel (and stay) the claims against them pending arbitration.  Defendants claim that the court lacks subject matter jurisdiction, or in the alternative, arbitration is required.  Defendants argue that because defendant SK-BV is a citizen of the Netherlands as is plaintiff, complete diversity does not exist.  It does not matter that plaintiff is also a citizen of Louisiana as plaintiff cannot pick and choose amongst its

---

[1] Plaintiff pleads this allegation via a vague mention in ¶ 12 of their Complaint (Rec. Doc. No. 1) but cite no statute.  The Court notes it is not mentioned in ¶ 3 of their Complaint entitled "Jurisdiction."

4

citizenship as a means to forum shop.  Both plaintiff and SK-BV are, as corporations organized under the Netherlands, considered aliens for jurisdictional purposes such that diversity fails. *See Chick-Kam*, 764 F.2d 1148 (5th Cir. 1985)(aliens get dual citizenship for diversity purposes); *Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352 (5th Cir.1985)(corporations are citizens of both their place of incorporation and their principal place of business).  Absent diversity defendants also argue that none of the vaguely cited federal statutes used by plaintiff in its Complaint confer federal question jurisdiction.  Neither the Economic Espionage Act or the Federal Insecticide and Rodenticide Act create a *private* right of action for a private litigant to obtain relief such that subject matter jurisdiction fails and plaintiff's Complaint must be dismissed.

However, alternatively, if the Court finds it has subject matter jurisdiction, defendants argue the Court must compel arbitration of all of plaintiff's claims.  Specifically, defendants argue that due to the broad scope of the arbitration clauses contained in the various agreements signed by the parties requires that the Court must compel the parties to arbitrate.  Defendants aver that any doubts about the scope of the arbitration provisions should be resolved in favor of arbitration.  *See, e.g.  Moses H. Cone Mem'l Hospt. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) (citing 9 U.S.C. ¶ 2, the Federal Arbitration Act); *see also Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000).

Furthermore, the fact that defendants are non-signatories to the arbitration clauses does not matter because per the equitable estoppel doctrine espoused in *Grigson v.CAA*, 210 F.3d 524 (5th Cir. 2000); *see also Westervelt v. Bayou Management*, LLC, 2003 WL 22533672 (E.D.La, Nov 04, 2003).  Under an "equitable estoppel doctrine, a non-signatory to an arbitration

5

agreement defendant can nevertheless compel arbitration against a signatory-plaintiff." *Grigson* 210 F.3d at 526.  Per *Grigson*, defendants aver that the Fifth Circuit recognizes two circumstances where a non-signatory may compel arbitration–first, "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement is asserting its claims against a non-signatory ... [s]econd, ... when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Grigson*, 210 F.3d at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999)).

Defendants argue that because plaintiff's claims depend on the license and supply agreements which contain a broad arbitration clause that covers all disputes "arising in, under, or in connection with" the agreement, and also because plaintiff's allegations against them are substantially interdependent and raise claims of concerted misconduct by defendants then defendants, even though they are non-signatories to these contracts, can hold plaintiff to arbitration.  Even plaintiff alleges that defendant SK-BV is a licensor of the products it (plaintiff) sells; accordingly plaintiff should be bound by its executed arbitration clauses.

Plaintiff responds that despite defendants characterizations, this case is really about the theft of proprietary information, specifically its confidential customer lists and its product registrations under FIFRA.  As to subject matter jurisdiction, FIFRA may not grant a private right of action to private citizens; however it does grant a cause of action to registrants under the act.  Plaintiff is such a registrant.  It is Sigma Coatings and not defendants who are the registrants

of products under FIFRA, and under FIFRA Sigma Coatings, as a registrant, can maintain an action for infringement of its registry. See 7 U.S.C. § 136n(c). Additionally, subject matter jurisdiction exists under § 201 of the Federal Arbitration Act (9 U.S.C. § 201). By filing in the International Chamber of Commerce for arbitration (claims plaintiff believes are wholly unrelated to its claims in this lawsuit), defendants have invoked a foreign arbitration proceeding. Under the FAA, federal subject matter jurisdiction exists under all foreign arbitrations. See 9 U.S.C. §§ 202, 203. Finally, 18 U.S.C. §§ 2701(a)(2) and 2707 creates a private right of action under the Electronic Espionage Act via defendants misappropriation of information via use of an electronic database.

As to arbitration, contrary to defendants' assertions of the equitable estoppel doctrine, under the Agreements (whether relevant or not) signed by the party, Dutch law governs. Consequently the Court must look to Dutch law when determining whether a non-signatory to an arbitration agreement can compel arbitration. Review of that question reveals that a non-signatory (in this case defendants) may not. Firstly, the Dutch system is based on civil law, and neither civil law nor the Dutch Supreme Court recognizes no doctrine of equitable estoppel. See Rec. Doc. No. 11, Plaintiff's Exh. A, p. 7, Affidavit of Bernard Hanotiau; see also Rec. Doc. No. 11, Plaintiff's Exh. C. Secondly, in the only contract that governs this dispute, that of the IT services contract which governed the use of SAP, there is *no* provision for arbitration. Defendants cannot compel arbitration when they have no clause on which to base the compulsion.

Accordingly, plaintiff has also filed a Motion to Enjoin Arbitration (Rec. Doc. No. 13), wherein plaintiff argues that the Court should not only find defendants' efforts to compel

arbitration to be suspect, but also that the Court should enjoin defendants from continuing to arbitrate these claims any further. In response defendants state that the ICC arbitration is separate from any IT claims brought by plaintiff and that in any event, venue is improper because the terms of the IT agreement cede "exclusive jurisdiction " to "the Courts of Amsterdam."

**Legal Standard**:

Federal courts are courts of limited jurisdiction. *Hashemite Kingdom of Jordan v. Layale Enterp., S.A.*, 272 F.3d 264, 269 (5th Cir.2001). The Constitution provides that "[t]he judicial Power . . . shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish". U.S. Const. art. III, § 1.

It is more than well established that Congress has plenary authority to regulate federal court jurisdiction and can withhold such jurisdiction at its discretion. *See Doleac v. Michalson*, 264 F.3d 470, 492 (5th Cir.2001); see also *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226 (1922); *Cary v. Curtis*, 44 U.S. (3 How.) 236, 245, 11 L.Ed. 576 (1845). "Courts created by statute can have no jurisdiction but such as the statute confers." *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850). In short, there must be a statutory basis for this Court's jurisdiction over the claims asserted by plaintiff. The party claiming federal subject matter jurisdiction has the burden of proving it exists. *Pettinelli v. Danzig*, 644 F.2d 1160, 1162 (5th Cir.1981).

A motion to dismiss an action for failure to state a claim "'admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts.'" *Crowe v. Henry*, 43

F.3d 198, 203 (5th Cir.1995)(quoting *Ward v. Hudnell*, 366 F.2d 247, 249 (5th Cir.1996). "[F]or purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleadings are drawn in favor of the pleader." Wright & Miller, *Federal Practice & Procedure* § 1357, at 417 (2004 West). "The district court may not dismiss a complaint under rule 12(b)(6) 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000)(quoting *Conley v. Givson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2L.Ed.2d 80 (1957). "In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations." *Id*. *see also Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045 (5th Cir. 1982). That being said, it is well established that courts do not have to accept every allegation in the complaint as true in considering its sufficiency. Wright & Miller, *Federal Practice & Procedure* § 1357, at 548-549; *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)(conclusory allegations and unwarranted deductions of fact are not admitted as true); *see also, Tuchman v. DSC Communications Corp*., 14 F.3d 1061, 1067 (5th Cir.1994) (accepting as true, for the purposes of a Rule 12(b)(6) dismissal, well-pleaded factual allegations, but rejecting "conclusory allegations or unwarranted deductions of fact.").

  The difference between dismissing a complaint because the court lacks subject matter jurisdiction under Rule 12(b)(1) versus where the plaintiff has failed to state a claim under Rule 12(b)(6) is a difference not of degree but of kind. *See, e.g., Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). The distinction between factual Rule 12(b)(1) motions

and factual Rule 12(b)(6) motions is rooted in the unique nature of the jurisdictional question.  It is elementary that a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached.  Jurisdictional issues are for the court to decide, regardless of whether they hinge on legal or factual determinations.  *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981).

      The issue of whether a federal question is involved requires the court to determine whether the complaint purports to state a claim "arising under" federal law. *See e.g., American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 258-60 (1916).   Under the well-pleaded complaint rule, an action arises under federal law for purposes of 28 U.S.C. § 1331 (1982) "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *The Federal Courts and the Federal System* 889 (2d ed. 1973), quoted in *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 (1983).

      Granted "defining when a claim arises under federal law has drawn much attention but no simple solutions."  *See Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. 1988); *see also Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 605 (5th Cir.1983). Whether a claim arises under federal law must be determined from the allegations in the well-pleaded complaint; *Id.*; *see generally* 13B Wright & Miller, § 3566 (2d ed. 1984). In cases removed to federal court, the plaintiff's well-pleaded complaint, not the removal petition, must establish that the case arises under federal law.  *See Franchise Tax Board*, 103 S.Ct. at 2847. This rule requires the court to determine federal jurisdiction from only those allegations necessary to state a claim.  Stated

10

differently, a federal court does not have jurisdiction over a state law claim because of a defense that raises a federal issue, even if the plaintiff anticipates and pleads the federal issue in his complaint.  *See Gully v. First National Bank at Meridian*, 299 U.S. 109 (1936).

**Analysis**:

The Court finds plaintiff's claims must be dismissed for a lack of subject matter jurisdiction.  Firstly, diversity between the parties does not exist.  Due to their dual citizenship, both plaintiff Sigma Coatings and defendant SK-BV are aliens for diversity purposes, as they are both citizens of the Netherlands.  *See, e.g., Panalpina*, 764 F.2d at 354.   Aliens cannot sue in diversity.  *See Chick Kam Choo*, 764 F.2d at 1149.

As to whether another basis for federal jurisdiction exists, the Court finds that plaintiff's reliance on both/either FIFRA or the EEA as a means to create federal question jurisdiction is misplaced, as is plaintiff's reliance in its opposition memorandum on ECPA.

1. FIFRA

Despite plaintiff's vehement contention otherwise, this Court can find no case in support of the proposition that FIFRA creates a *private* right of action on behalf of a registrant against another *private* party.  Every case reviewed by this Court and cited by both parties requires the presence of the Environmental Protection Agency or its designated representative.  The statute regulates the grant, from the EPA, of registry rights, and the Court finds the statute itself contemplates that any such infringement of these rights are to be regulated and/or policed by the granting authority; that is to wit, the EPA.  *See, e.g.* 7 U.S.C. § 136h(c)(authorizing applicant or registrant to institute action in district court to settle dispute with *Administrator* over trade secrets).

Absent plaintiff's pursuit of its statutorily granted and governed administrative remedies prior to the institution of any lawsuit herein, this Court does not have jurisdiction under FIFRA. Specifically, in ¶4 of page 6 of their Complaint plaintiff asks the Court to declare it the owner, under FIFRA, of the disputed registrations. Yet absent an administrative determination by the EPA, the Court finds it has no power to review ownership of FIFRA registrations. *See* 7 USC 136n, notes 1- 8.; 136d note 27; *see also Safer, Inc. v. Thomas*, 1986 WL 15405 (D.D.C. Nov. 18, 1986). There has been no agency action in this case, much less any "final" agency action. *See Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333,337 (5th Cir. 2004).[2]  Accordingly, the Court finds that plaintiff must go through the statutorily defined FIFRA arbitration process if they have questions over the ownership, identity, and/or use of the contested registrations issued by the EPA pursuant to FIFRA, and it is this process that can then be directly reviewed by a district court. *See, e.g.* 7 U.S.C. § 136n(c).

The Court notes that at oral argument plaintiff relied on 7 § U.S.C. 136j(a)(1)(A) as its basis of jurisdiction under FIFRA. 7 § U.S.C. 136j(a)(1)(A) states in pertinent part:

---

[2]In *Thomas v. Union Carbide*, 473 U.S. 568, 591 (1985), the Supreme Court held that Congress's creation of the FIFRA's arbitration scheme in order to determine the rights and obligation of any follow-on registrants, including a registry holder's rights to compensation, was constitutional and not a violation of Article III powers. According to the Supreme Court, FIFRA "contains no provision explicitly authorizing a party to invoke judicial process to compel arbitration or enforce an award, and under FIFRA, "the only potential object of judicial enforcement power is the follow-on registrant who explicitly consents to have his rights determined by arbitration." *Id.* Claimants therein were bringing a constitutional challenge against the scheme, and the Court ruled they had standing do so. However, in the instant case we have *no* constitutional challenge, and no arbitration under the FIFRA has occurred. Additionally, the EPA is not a party to this instant suit. As held by the Court, "FIFRA at a minimum allows private parties to secure Article III review of the *arbitrator's* 'findings, and determination' for fraud, misconduct, or misrepresentation" as a means to protect against arbitrators who "abuse or exceed their powers." *Id.* at 592(emphasis added). *Thomas* says nothing as to whether plaintiff can sue, based on FIFRA another *private company* who may be abusing its power.

> § 136j. Unlawful acts
> (a)  In General
> (1) . . . [I]t shall be unlawful for any person in any State to distribute or sell to any person–
> (A)  any pesticide that is not registered under section 136a of this title or whose registration has been canceled or suspended, except to the extent that distribution or sale otherwise has been authorized by the Administrator under this subchapter;

7 § U.S.C. 136j(a)(1)(A).

The Court finds such provision inapposite to the facts as pled. Plaintiff has made no allegations that defendants have been distributing or selling any unregistered pesticides. Rather, at best plaintiff's Complaint can be read as an attempt to prevent defendants from *potentially* selling registered pesticides by virtue of disputed ownership over the right to sell such pesticides. Additionally, plaintiff has made no allegation that the distribution or sale of the registered pesticides in question has been suspended. Quite simply this provision, which regulates the sale and distribution of unregistered pesticides does not apply to a dispute between two former business partners over ownership of certain pesticide registry rights, and the Court finds its use by plaintiff here insufficient to confer subject matter jurisdiction.

    2.  Electronic Espionage Act of 1996 ("EEA")

"[A]ll the rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41 (1957). "Generally speaking if the pleadings provide adequate notice, then an inference may be drawn that all the elements of a cause of action exist." *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 278 (5th Cir.1990).

Plaintiff, without citing the statute, pleads a violation of the Economic Espionage Act via one brief mention in paragraph 12 of its Complaint.[3]  See Rec. Doc. No. 1, ¶ 12.  Plaintiff's allegation in paragraph 12 reads in full:

> The misappropriation and use of Sigma Coatings' confidential and proprietary customer and other information by SigmaKalon B.V. and SigmaKalon USA is a violation of one or more trade secrets acts, trade practices acts, and the *Economic Espionage Act of 1996*, and constitutes multiple business torts, including fraudulent misrepresentation, interference with contract, interference with prospective business advantage, and unfair competition, for all of which SigmaKalon B.V. and SigmaKalon USA are answerable to Sigma Coatings for economic damages, punitive damages, penalties, costs, and attorneys' fees.

See Rec. Doc. No. 1, ¶ 12 (emphasis added).

Additionally, the Court further notes that unlike FIFRA, the EEA was not mentioned as a part of the Complaint's jurisdictional statement.  See id. at ¶ 3.  The Court further notes that the Economic Espionage Act, 18 U.S.C. §§ 1831-9, is located in the criminal code of the United States Code and to date there have been no criminal allegations brought against defendant.[4]  Without

---

[3]Paragraph 12 reads in full:
The misappropriation and use of Sigma Coatings' confidential and proprietary customer and other information by SigmaKalon B.V. and SigmaKalon USA is a violation of one or more trade secrets acts, trade practices acts, and the Economic Espionage Act of 1996, and constitutes multiple business torts, including fraudulent misrepresentation, interference with contract, interference with prospective business advantage, and unfair competition, for all of which SigmaKalon B.V. and SigmaKalon USA are answerable to Sigma Coatings for economic damages, punitive damages, penalties, costs, and attorneys' fees.
See Rec. Doc. No. 1, ¶ 12.

[4]18 U.S.C.A. § 1831 reads:
(a) In general.--Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly--
   (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;
   (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret;
   (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;
   (4) attempts to commit any offense described in any of paragraphs (1) through (3); or
   (5) conspires with one or more other persons to commit any offense described in any of

14

delving into into whether such a statute would even apply to the case and facts at hand, the Court finds that based on the allegation as styled in plaintiff's Complaint and outlined above, that *even* pursuant to Rule 8 and the liberal "Notice Pleading" requirements outlined therein, plaintiff fails to adequately plead the EEA as a basis of federal jurisdiction.  See Fed. Rule. Civ. P. 8(a), (e). Plaintiff's complaint only makes a passing reference to the popular name for this statute, it cites no exact statutory reference, and none of the allegations are directed as to how defendants may have possibly violated it.   As such, the Court finds that plaintiff's allegations as to the EEA fail to put defendant on adequate notice and cannot serve as a basis of jurisdiction.  *See Conley*, 355 U.S. at 41.

       3.       Electronic Communications Privacy Act ("ECPA")

Plaintiff briefs the ECPA as a potential basis for jurisdiction extensively in its opposition memoranda.  However, the ECPA *appears nowhere in plaintiff's Complaint*.  It is well-settled that it is plaintiff's Complaint, and not any other brief, pleading, or memoranda, that the Court must look to when determining jurisdiction.  Additionally, the Court notes that in the interests of completeness it did review those portions of the ECPA cited by plaintiff in its Opposition.  Given this review, even if the ECPA had been properly pled, the Court finds jurisdiction based therein would still be questionable as these statutes are located in the United States criminal code, and to

---

       paragraphs (1) through (3), and one or more of such persons do any act to effect the object
       of the conspiracy,
shall, except as provided in subsection (b), be fined not more than $500,000 or imprisoned not more than 15 years, or both.

(b) Organizations.--Any organization that commits any offense described in subsection (a) shall be fined not more than $10,000,000.  18 U.S.C.A. § 1831.

date, there has been no allegations of criminal wrongdoing brought by any party against defendants.  Additionally, the Court further notes that nowhere in plaintiff's Complaint is an "electronic" taking of information alleged, as is a requirement under the act.  18 U.S.C. § 2701(a) states that whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; *and* thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage"  shall be in violation of the act and subject to criminal penalties.  18 U.S.C. § 2701.  Plaintiff's Complaint contains no mention of the word "electronic" or any allegation that defendants used "electronic" means to effect any alleged misappropriation.  Accordingly, given that plaintiff fails to cite 18 U.S.C. § 2701 anywhere in its Complaint, and even if it were cited, its applicability is suspect, this basis of jurisdiction fails.

As to the parties' various arguments on the validity of any ongoing arbitration, because the Court finds it lacks subject matter jurisdiction in this matter, it is precluded from addressing any such issues.  Relatedly, finding no subject matter jurisdiction the Court will deny plaintiff's motion to enjoin arbitration (Rec. Doc. No. 13).

Accordingly,

**IT IS ORDERED** that defendants' Motion to Dismiss or, alternatively, Stay Proceedings and Compel Arbitration (Rec. Doc. No. 4) is hereby **GRANTED** as this Court lacks  subject matter jurisdiction over plaintiff's claims.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants are hereby **DISMISSED**, without prejudice, for lack of jurisdiction .

**IT IS FURTHER ORDERED** that plaintiff's Motion to Enjoin Defendants from Pursuing Arbitration (Rec. Doc. No. 13) is hereby **DENIED**.

New Orleans, Louisiana, this 31st day of August, 2006.

*[signature]*

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**